*S. P. Cain,* contra.

---

### 11904.   PULLEN *v.* THE STATE.

BROYLES, C. J.   1. The evidence objected to, though somewhat vague and inconclusive, was admissible for what it was worth.

2. The evidence in the case, though weak and not altogether satisfactory, authorized the verdict; and, the finding of the jury having been approved by the trial judge, this court is without authority to interfere.

*Judgment affirmed.* *Luke and Bloodworth, JJ., concur.*

DECIDED JANUARY 25, 1921.

Accusation of cheating and swindling; from city court of Wrightsville — Judge Blount. September 27, 1920.

W. M. Pullen was convicted upon an accusation charging him with " the offense of a misdemeanor, cheating and swindling, " for that on the first day of· January, 1919, he unlawfully failed and refused to deliver to William Wilson, his cropper, the part of the crop belonging to the said cropper, or its value, coming to the said cropper after payment for all advances made to him to make the said crop during the year 1918, to the loss and damage of the said Wilson in the sum of $90.46. The accusation was dated May 6, 1920. On the trial William Wilson testified: " I worked a crop on halves with W. M. Pullen during the year 1918. . . Mr. Pullen furnished everything except one half of the guano. I furnished the labor and worked and gathered the crop and [furnished ?] one half of the guano, and was to receive one half of the crops. I completed my part of the contract, made and gathered the crops. The first two bales of cotton I picked out I carried off to market and sold them, but I brought back what they brought and turned it over to Mr. Pullen. I do not know how much they brought or how much his half of the money for the cotton was. All I know is I brought back half of what it brought and turned it over to Mr. Pullen. We have never had any settlement. I never could get him to any settlement. I turned over to· Mr. Pullen six bales of cotton to be shipped to Savannah. We were not offered enough for the cotton, and Mr. Pullen thought we could get more for it, and we shipped it to Savannah. This was about the first week in November, I think. We divided everything else made on the farm all right. I called on him for a settlement before I moved off his place just before Christmas, but he said he could not give me a settlement until the cotton shipped to Savannah was sold and he got returns for it. . . After Christmas, some time ·in January, he told me that the cotton in Savannah had been sold. I called on him for a settlement and he told me to come over to Mr. Grant's where he was boarding, where he claimed his books were, and he would settle. I went there, but he was away. He finally told me to come over to his sawmill and he would bring the books and we would have a settlement. I went over to the sawmill three or four times and he never would have a settlement. I went there one time and he claimed that he did not have time, as his engine was broke and

his mill stopped and he had to work on it at the dinner hour. The other times he had one reason and another why he could not stop and have a settlement with me. At another time he told me to come over to Mr. Grant's, but I had got tired of running around so much trying to get a settlement. I think he owes me about $150. I think he owes me that amount for I ought to have had about that much more out of the crop. I can't read nor write. Mr. Pullen gave me a statement of my account when we shipped the cotton. This is the statement he gave me. I don't know what is on this statement. I can't read nor write, but if he says $90.46, then he owes me that amount. . . I didn't keep any account, nor did any one for me. I don't know how much my account is, but I know he owes me. . . He ought not to have much charged to me. I got $50 from him at Kite about the time we shipped the cotton." The witness testified as to other amounts received by himself, and concluded as follows: "I don't know how much the cotton in Savannah brought. I think he said it brought 28-3/4 cents. I don't know how much my half was, whether it was $413.88 or not. All I know is that he owes me and I could not get a settlement. I worked for him in 1909, but he got all the crop that year, and I know I didn't owe him anything then." Other witnesses testified as to the repeated efforts of Wilson to get a settlement from the defendant. The written statement mentioned by the witness was introduced in evidence, over objection of the defendant. The defendant, in his statement at the trial, denied that he owed anything to Wilson, and said that Wilson owed him a balance of $44.07. The case came to this court on exceptions to the overruling of the defendant's motion for a new trial, based on the usual general grounds and on two special grounds.

The first special ground of the motion for a new trial was that "the following material evidence was illegally admitted to the jury by the court over the objection of movant, to wit: 'I think he owes me about $150. I think he owes me that amount for I ought to have had that much more out of the crop." This testimony was objected to upon the ground that it was merely a conclusion of the witness, without facts upon which to base it.

The second special ground contains a copy of the written statement which Wilson testified was a statement of his account, given

to him by Pullen when the cotton was shipped. In this ground this statement was followed by the words: " I can't read and write. I don't know what's on this statement. If it says $90.46, then he owes me that. " It is alleged that " material evidence was illegally admitted, " as here set out, over the movant's objections that the statement offered was irrelevant and immaterial; that it was not dated or signed, and that there was nothing in it from which the jury could determine whether the cropper had received his half of the crop or not, or whether he had been damaged or not; and that the statements made by the witness were mere conclusions of the witness, and it was for the jury to determine what the facts showed. The written statement referred to was headed: " In acct with W. M. P. Cotton weights. " It contained a column of figures, the first five items of which were amounts running from 451 to 581, under which was the total, 3211, to which was added the item " One 100 in Wm. Wilson and Lester 100, " followed by the total 3311. Under this, and following the words " cotton 28¢," were the figures 924. Other items were added, one of which was "cotton seed, " and at the bottom were two items: " total in all cotton and seed 45904, " " Due Wm. Wilson 9046. "

*A. L. Hatcher,* for plaintiff in error.